UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Natasha Griffin,<br><br>Plaintiff,<br><br>-against-<br><br>Oportun, Inc.; Trans Union LLC a/k/a TransUnion; Experian Information Solutions, Inc.,<br><br>Defendants. | Civil Action<br>Case No.: 2:26-cv-05997<br><br>**COMPLAINT** |

Plaintiff Natasha Griffin ("Plaintiff"), by and through her attorneys, Petroff Amshen LLP, alleges as follows upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters:

1. Plaintiff brings this action against Trans Union LLC a/k/a TransUnion ("TransUnion"), Experian Information Solutions, Inc. ("Experian"), and Oportun, Inc. ("Oportun"), arising from their willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

2. In July 2022, an eighteen-month loan of $535.00 was taken out in Plaintiff's name. Plaintiff neither applied for it nor authorized anyone to do so. Three credit reporting agencies carried that loan on her file, and they did not agree about what it was. TransUnion and Experian told users of her reports that she owed $247.00 on it. Equifax Information Services LLC ("Equifax"), a non-party to this action, told them the loan was paid, the balance was zero, and Plaintiff had paid as agreed in twenty-two of the twenty-four months it reported.

3. In July 2026, Plaintiff filed a sworn identity theft report about the loan and wrote to all three agencies denying it, enclosing that report and her identification. Equifax removed the

loan from her file. TransUnion kept reporting it as before. Experian changed what the loan was, replacing the unpaid $247.00 with a statement that the loan had been paid and closed with $542.00 written off.

4. Plaintiff obtained her reports again on August 31, 2026. The loan was still on two of her three credit files, still attributed to her, and still described in two ways that cannot both be true.

**PARTIES**

5. Plaintiff is an individual resident of the State of New York, residing in Nassau County, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

6. Oportun is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in San Mateo, California, and is a "person" within the meaning of 15 U.S.C. § 1681a(b) and a furnisher of information to consumer reporting agencies within the meaning of 12 C.F.R. § 1022.41(c), subject to the FCRA, including under 15 U.S.C. § 1681s-2.

7. TransUnion is a Delaware limited liability company, with its principal place of business in Chicago, Illinois, and is a "consumer reporting agency," as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

8. Experian is an Ohio corporation, with its principal place of business in Costa Mesa, California, and is a "consumer reporting agency," as defined by and subject to 15 U.S.C. §§ 1681a(f) and 1681a(p).

9. Non-party Equifax is a consumer reporting agency that maintained a consumer file on Plaintiff, reported the loan at issue on her consumer reports, and received her dispute package concerning that loan.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law.

11. This Court has personal jurisdiction over each Defendant pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and New York Civil Practice Law and Rules ("CPLR") § 302(a)(1), and the exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment.

12. Oportun transacts business within the State of New York within the meaning of CPLR § 302(a)(1). It is registered to do business in New York and maintains a registered agent for service of process here, C T Corporation System, 28 Liberty Street, New York, New York 10005. It furnishes information concerning New York consumers to the national consumer reporting agencies. Plaintiff transmitted her dispute from New York, and Oportun, on notice that Plaintiff was a New York consumer, left its information in her consumer file. Plaintiff's claims against Oportun arise from that New York-directed conduct.

13. TransUnion transacts business within the State of New York. It maintains consumer files on New York residents, including Plaintiff. It prepares and sells consumer reports concerning New York residents to users located in New York, including creditors, lenders, and landlords, and it prepared, sold, or disseminated consumer reports concerning Plaintiff to such users. TransUnion is registered to do business in New York as Trans Union (of Delaware), LLC and maintains a registered agent for service of process here, Corporation Service Company, 80 State Street, Albany, New York 12207-2543.

14. Experian transacts business within the State of New York. It maintains consumer files on New York residents, including Plaintiff. It prepares and sells consumer reports concerning

New York residents to users located in New York, including creditors, lenders, and landlords, and it prepared, sold, or disseminated consumer reports concerning Plaintiff to such users. Experian is registered to do business in New York and maintains a registered agent for service of process here, C T Corporation System, 28 Liberty Street, New York, New York 10005.

15. Plaintiff transmitted her dispute to TransUnion and to Experian from New York, and each directed its reinvestigation and its handling of her identity theft block request at the consumer file of a New York resident. Plaintiff's claims against TransUnion and Experian arise from that New York-directed conduct.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the dissemination of and reliance upon Plaintiff's consumer reports here and the harm Plaintiff suffered here.

## STATEMENT OF FACTS

17. Plaintiff is a victim of identity theft.

18. On July 26, 2022, a person Plaintiff cannot identify used her personal identifying information to obtain an eighteen-month unsecured installment loan of $535.00. Plaintiff did not apply for that loan, authorized no one to apply for it, never held it, and received nothing under it.

19. On May 6, 2026, Plaintiff obtained a report drawing on the files TransUnion, Experian, and Equifax each kept on her. All three carried an eighteen-month installment loan opened in her name in July 2022, Account No. 55844XXXX, which the report lists under the name OPRTUNMETABK (the "Account").

20. Oportun furnished the information about the Account to TransUnion, to Experian, and to Equifax.

21. TransUnion reported that Plaintiff owed $247.00 on the Account, that the entire $247.00 was past due, and that the Account stood in collection or charge-off. Across the twenty-four months the report covered, TransUnion reported no payment history for the Account at all. It nonetheless reported a payment on March 29, 2025 that came more than two years after the Account's last activity, which it dated January 31, 2023.

22. Experian reported the same $247.00 balance, all of it past due. Its grid marked the Account charged off in twenty-three consecutive months, from May 2023 through March 2025. It also reported a payment on March 29, 2025 that fell in a month its own grid marked charged off, and more than two years after the Account's last activity, which it dated January 1, 2023.

23. Equifax reported the opposite: a zero balance, nothing past due, a paid charge-off, an original charge-off amount of $542.00, and twenty-two of those same twenty-four months paid as agreed. It dated both the last payment and the Account's last activity January 1, 2023.

24. Where reasonable procedures are followed, a single furnisher reporting one loan to three agencies does not produce, over the same twenty-four months, twenty-three months of charge-off, twenty-two months of payment as agreed, and no history at all. Whatever the truth of the Account, the charge-off history and the history of payment as agreed cannot both be true, so at least one agency was publishing false information about Plaintiff before she ever wrote to it. The divergence is itself evidence that the procedures TransUnion and Experian followed were not directed at the maximum possible accuracy the FCRA requires.

25. While the Account sat on Plaintiff's files, TransUnion and Experian each furnished her consumer report to other businesses that asked for it. TransUnion's own report records seven such disclosures between September 2, 2024 and September 9, 2025. Five went to businesses TransUnion types as personal finance companies or automotive businesses. Experian's records

thirty-three between August 23, 2024 and April 1, 2025. Twenty-nine went to businesses Experian types as automobile dealers or auto financing companies. Thirty-one of Experian's disclosures fall in three bursts: August 23 through 25, 2024; September 2, 2024; and January 9 through 14, 2025. On January 13, 2025 alone, Experian furnished Plaintiff's report to nine businesses and TransUnion furnished hers to four.

26. Those disclosures show that the inaccurate reporting was material, that it reached actual lenders, and that the harm was already underway when TransUnion and Experian received her dispute. Upon information and belief, those bursts reflect Plaintiff's applications for automobile financing, each report furnished in response carried the Account as a charged-off debt, and Plaintiff was denied the auto loan she sought.

27. On July 9, 2026, Plaintiff filed an Identity Theft Report with the Federal Trade Commission, Report No. 203793318 (the "FTC Report"). The FTC Report identifies the Account by its tradeline name, OPRTUNMETABK, and by its number, gives July 2022 as the month the fraud began and $247.00 as the fraudulent amount, and reports the Account as one an identity thief opened in her name. Plaintiff made it under penalty of perjury.

28. On July 17, 2026, Plaintiff sent TransUnion, Experian, and Equifax a written dispute of the Account. The dispute package contained a signed letter, the FTC Report, a copy of Plaintiff's credit report showing the disputed accounts, and copies of her identification documents.

29. The letter told each agency that the Account did not belong to Plaintiff, that she did not open it, that she did not authorize anyone to open it, and that she received no benefit from it, and asked each agency to block and remove the Account or, if the reported information could not be verified, to delete it.

30. The letter also set out for each agency the harm that the inaccurate reporting on her file, including the Account, had caused: that Plaintiff had been denied a credit card, an auto loan, and a personal loan; that she had lost the opportunity to obtain a mortgage and a business loan; that she had not been hired for a position because of her damaged credit profile; that she had suffered stress, anxiety, depression, sleep problems, fear, anger, and physical symptoms and had sought help from a therapist or counselor; and that she had spent more than twenty hours trying to correct it. Each agency was therefore on notice, before it began any reinvestigation, that what it published about the Account was causing Plaintiff ongoing financial and personal harm.

31. Upon information and belief, TransUnion and Experian each received Plaintiff's dispute package.

32. Upon information and belief, TransUnion and Experian gave Oportun notice of Plaintiff's dispute of the Account, as 15 U.S.C. § 1681i(a)(2) required each of them to do within five (5) business days of receiving it, and those notices conveyed that Plaintiff denied opening or authorizing the loan and had filed an identity theft report about it.

33. On August 31, 2026, Plaintiff obtained updated reports from TransUnion, Experian, and Equifax. Equifax had removed the Account from Plaintiff's file. TransUnion and Experian had not.

34. TransUnion's August 31, 2026 report gives the same $247.00 balance, the same $247.00 past due, the same charge-off status, the same profit and loss write-off comment, and the same empty payment history it gave in May. TransUnion updated every other tradeline on Plaintiff's file in June or July 2026, but it has not updated the Account's balance since March 31, 2025. That was more than fifteen months before Plaintiff wrote to it.

35. Its August 31, 2026 report lists it as PATHWARD NA/OPORTUN, with the same account number, July 26, 2022 opening date, $535.00 original balance, and eighteen-month term that TransUnion lists for OPRTUNMETABK. Where Experian had reported an unpaid $247.00 charge-off, it now states that the loan was "Paid, Closed. $542 written off." It reports no balance and no balance date, while every other tradeline on the report carries a balance updated in July or August 2026. Neither the $542.00 figure nor the paid status was on Experian's May report. Both were on Equifax's, where $542.00 was the original charge-off amount of the same Account. Experian did not verify what it had been reporting; it published a different version of the debt. Yet the same report still marks the Account charged off through March 2025, so that Experian tells users in one place that the loan was paid and in another that it was charged off.

36. Plaintiff's dispute put one question to each agency: who obtained this loan. Neither agency's August 31, 2026 report answers that question. Experian's consumer statement that the item is in dispute records only that Plaintiff contests the debt, not what Experian did about it.

37. Section 1681s-2(b) required Oportun, on receiving notice of the dispute from a consumer reporting agency, to investigate the disputed information, to review what the agencies sent it, to report the results, and to modify, delete, or permanently block anything it could not verify. Upon information and belief, Oportun answered TransUnion and Experian by verifying the Account as Plaintiff's, without first establishing that Plaintiff had applied for the loan.

38. Upon information and belief, whoever applied for that loan gave the lender a name, an address, a date of birth, and a Social Security number, and the lender kept what it was given. The application, the identification taken with it, the record of where the $535.00 went, and the transaction history on the Account are in Oportun's possession, custody, or control.

39. Plaintiff learned of the outcome of her dispute by obtaining her own consumer reports. Upon information and belief, no agency sent her written notice of the results of its reinvestigation, notice that a description of the procedure it used was available on request, or notice of her right to add a statement to her file. TransUnion's report carries no personal statement on Plaintiff's file.

40. Upon information and belief, Oportun continued to furnish the Account to TransUnion and to Experian after Plaintiff disputed it, including in its answer to each agency's notice of the dispute. The Account has been reported on Plaintiff's TransUnion file and on her Experian file since before her dispute and remains on both.

41. On August 31, 2026, Plaintiff's FICO Score 8 was 588 on Experian data and 607 on TransUnion data. On Equifax data, the file that no longer carries the Account, it was 652. Her Experian-based FICO Auto Score 8, which lenders use for automobile financing, was 579, and her FICO Score 2, used primarily in mortgage lending, was 544.

42. Plaintiff spent more than twenty hours attempting to correct the reporting of the Account.

43. She has endured stress, anxiety, depression, sleep problems, fear, and anger while trying to remove from her credit reports a loan she never took. She has been denied credit, including a credit card, an auto loan, and a personal loan, has lost the opportunity to obtain a mortgage and a business loan, and was not hired for a position because of her damaged credit profile. She has suffered physical symptoms, has sought professional help from a therapist or counselor, and has seen the financial hardship reach the family members who depend on her.

44. As a direct and proximate result of the continued inaccurate reporting of the Account, Plaintiff suffered injury to her creditworthiness and financial reputation, lost time, and emotional distress.

**CAUSES OF ACTION**

**COUNT I: Willful Noncompliance Against Oportun**
**(Violations of 15 U.S.C. § 1681s-2(b))**

45. Plaintiff incorporates by reference each of the preceding paragraphs.

46. Upon TransUnion's and Experian's transmittal of Plaintiff's notice of dispute, Oportun was obligated under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation with respect to the disputed information, to review all relevant information they provided, to report the results of that investigation to them, to report any finding of inaccuracy to every other nationwide consumer reporting agency to which it had furnished information concerning the Account, and to modify, delete, or permanently block the reporting of information it found to be inaccurate, incomplete, or incapable of verification.

47. Oportun had reasonable cause to believe that the information it furnished concerning the Account was inaccurate. Upon information and belief, it holds no documentation showing that Plaintiff applied for, opened, or authorized the underlying loan, and the notice of dispute it received conveyed that Plaintiff had filed a sworn identity theft report about the Account.

48. After receiving notice of the dispute, Oportun did not cause the Account to be deleted from Plaintiff's TransUnion or Experian file or its reporting to be permanently blocked. TransUnion went on reporting the Account at the same $247.00 balance, the same $247.00 past due, and the same charge-off status it had reported before the dispute, and Experian went on reporting the Account against Plaintiff as a written-off debt.

49. Had Oportun conducted a reasonable investigation, the result would have been different. A reasonably prudent furnisher reviewing its own records of the loan against Plaintiff's sworn FTC Report would have determined that Plaintiff did not apply for, open, or authorize the underlying loan, and that what it was furnishing was inaccurate.

50. Oportun's conduct was willful. Oportun acted with knowledge of its obligations under 15 U.S.C. § 1681s-2(b), or in reckless disregard of those obligations and of Plaintiff's rights, and any reading of those obligations that would permit its conduct here is objectively unreasonable.

51. For the same twenty-four months, the May 6, 2026 report shows three irreconcilable payment histories for the Account. Upon information and belief, Oportun furnished the information behind all three. A furnisher does not generate three irreconcilable records of the same account by accident. It generates them by reporting without any procedure for verifying what it reports.

52. Equifax ceased reporting the Account after Plaintiff sent it the same dispute package, sworn FTC Report included. Oportun's information stayed on the other two files.

53. As a direct and proximate result of Oportun's willful failure to comply with 15 U.S.C. § 1681s-2(b), Plaintiff suffered the injuries alleged above, and is entitled to actual or statutory damages, punitive damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

**COUNT II: Negligent Noncompliance Against Oportun**
**(Violations of 15 U.S.C. § 1681s-2(b))**

54. Plaintiff incorporates by reference each of the preceding paragraphs.

55. In the alternative to Count I, Oportun's conduct constituted negligent noncompliance with its duties as a furnisher of information under 15 U.S.C. § 1681s-2(b).

56. Oportun failed to exercise reasonable care in furnishing information concerning the Account and in investigating Plaintiff's dispute. A reasonably careful furnisher would have measured what it was reporting against its own records of the loan, would have weighed the sworn FTC Report, and would have deleted a tradeline it could not verify.

57. As a direct and proximate result of Oportun's negligent failure to comply with 15 U.S.C. § 1681s-2(b), Plaintiff suffered the injuries alleged above, and is entitled to actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

**COUNT III: Willful Noncompliance Against TransUnion and Experian**
**(Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)**

58. Plaintiff incorporates by reference each of the preceding paragraphs.

59. Pursuant to 15 U.S.C. § 1681i(a)(1)(A), TransUnion and Experian were each required to conduct a reasonable reinvestigation to determine the accuracy of the disputed information and record its current status, or delete the item from the file, within thirty (30) days of receiving Plaintiff's dispute.

60. Neither TransUnion nor Experian conducted a reasonable reinvestigation. Upon information and belief, each did no more than relay Plaintiff's dispute to Oportun and adopt the answer Oportun returned, without opening its own file on Plaintiff.

61. Plaintiff's dispute put in issue who had obtained the loan, not what the balance was. The sworn FTC Report identified the disputed tradeline by the name the May 6, 2026 report listed and by its account number, and it arrived with Plaintiff's identification and her written statement that the Account was not hers. A reinvestigation that confirmed a figure Oportun had reported left that question untouched.

62. TransUnion and Experian each failed to review all relevant information Plaintiff submitted, including the FTC Report, as 15 U.S.C. § 1681i(a)(4) requires, and failed to delete or

correct the inaccurate information or to record its current status. TransUnion recorded nothing about the dispute, leaving the Account's balance as it had last updated it on March 31, 2025. Experian recorded something different about the same Account, that it had been paid and closed with $542.00 written off, without addressing whether the Account was Plaintiff's at all.

63. Upon information and belief, neither TransUnion nor Experian gave Plaintiff written notice of what its reinvestigation of the Account produced, told her that a description of the procedure it used was available on request, or told her of her right to add a statement of dispute to her file, as 15 U.S.C. § 1681i(a)(6) requires.

64. The failure to perform a reasonable reinvestigation was willful. TransUnion and Experian acted with knowledge of their duties under 15 U.S.C. § 1681i, or in reckless disregard of those duties and of Plaintiff's rights, and any reading of those duties that would permit their conduct here is objectively unreasonable. Each held a sworn federal identity theft report naming the tradeline, each held Plaintiff's identification, and each knew from Plaintiff's own letter what the reporting was costing her.

65. The agencies' own post-dispute reports show that neither TransUnion nor Experian answered the question Plaintiff's dispute put to it. TransUnion published the same balance, the same past due amount, the same status, and the same comment after the dispute that it published before it, down to the March 31, 2025 date on which it had last updated the balance. Experian changed what it said the debt was and left the date on which it last updated the Account's status in March 2025. Equifax, to which Plaintiff sent the same package, deleted the Account.

66. As a direct and proximate result of TransUnion's and Experian's willful failure to comply with 15 U.S.C. § 1681i, Plaintiff suffered the injuries alleged above, and is entitled to

actual or statutory damages, punitive damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

**COUNT IV: Negligent Noncompliance Against TransUnion and Experian**
**(Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)**

67. Plaintiff incorporates by reference each of the preceding paragraphs.

68. In the alternative to Count III, the conduct of TransUnion and Experian constituted negligent noncompliance with their duty to conduct a reasonable reinvestigation of disputed information under 15 U.S.C. § 1681i(a).

69. TransUnion and Experian each failed to exercise reasonable care in reinvestigating Plaintiff's dispute. A reasonably careful agency would have read the sworn identity theft report in its hands, would have asked the furnisher for the records that show who obtained the loan, and would have declined to keep publishing an item it could not verify.

70. As a direct and proximate result of TransUnion's and Experian's negligent failure to comply with 15 U.S.C. § 1681i, Plaintiff suffered the injuries alleged above, and is entitled to actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

**COUNT V: Willful Noncompliance Against TransUnion and Experian**
**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy - Violation of 15 U.S.C. § 1681e(b))**

71. Plaintiff incorporates by reference each of the preceding paragraphs.

72. Pursuant to 15 U.S.C. § 1681e(b), a consumer reporting agency must follow reasonable procedures to assure maximum possible accuracy of the information in its reports.

73. The reporting of the Account was inaccurate. It was patently incorrect, because Plaintiff never applied for, opened, authorized, or benefited from the underlying loan. It was also misleading in such a way and to such an extent that it can be expected to have an adverse effect on

credit decisions, because it presented Plaintiff to every user of her TransUnion and Experian consumer reports as the obligor on a loan she never took.

74. Whether Plaintiff applied for or authorized the underlying loan is a question of fact that is objectively and readily verifiable from the application and identification records held by Oportun. The inaccuracy Plaintiff identifies does not turn on any unsettled question of law.

75. Neither TransUnion nor Experian followed reasonable procedures to assure maximum possible accuracy of the information it reported concerning Plaintiff. Neither had a procedure that gave any weight to a sworn federal identity theft report naming the very tradeline it was publishing, or that required the furnisher to produce the records showing who obtained the loan, or that reconciled what it published about the Account against what the other agencies published about the same loan. TransUnion had no procedure that stopped it from publishing a balance it had not updated since March 31, 2025. Experian had no procedure that stopped it from reporting the Account paid and closed while publishing no balance and no date on which it last updated one.

76. TransUnion and Experian hold the same identifying information about Plaintiff. Each reports her under the same name, at the same Port Washington, New York, address, at the same two California addresses, and with the same year of birth. The two agencies agree about who Plaintiff is and disagree about the Account, and Equifax, to which Plaintiff sent the same dispute package, removed the Account from her file altogether. One alleged loan concerning one consumer does not produce a $247.00 charged-off balance at one agency, a paid and closed account with $542.00 written off at a second, and no account at all at the third, where procedures directed at maximum possible accuracy are followed.

77. The failure to establish or follow such procedures was willful, representing a knowing failure to comply with statutory duties or a reckless disregard for the accuracy of the information TransUnion and Experian each compile and disseminate concerning Plaintiff, and any reading of 15 U.S.C. § 1681e(b) that would permit this conduct is objectively unreasonable.

78. As a direct and proximate result of TransUnion's and Experian's willful failure to comply with 15 U.S.C. § 1681e(b), Plaintiff suffered the injuries alleged above, and is entitled to actual or statutory damages, punitive damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

**COUNT VI: Negligent Noncompliance Against TransUnion and Experian**
**(Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy - Violation of 15 U.S.C. § 1681e(b))**

79. Plaintiff incorporates by reference each of the preceding paragraphs.

80. In the alternative to Count V, the conduct of TransUnion and Experian constituted negligent noncompliance with their duty to follow reasonable procedures to assure maximum possible accuracy of information in their consumer reports under 15 U.S.C. § 1681e(b).

81. TransUnion and Experian each failed to exercise reasonable care in preparing Plaintiff's consumer reports and in assuring their accuracy. TransUnion released her file to users on seven occasions recorded in its own report between September 2024 and September 2025, and Experian released hers on thirty-three occasions recorded in its own report between August 2024 and April 2025.

82. As a direct and proximate result of TransUnion's and Experian's negligent failure to comply with 15 U.S.C. § 1681e(b), Plaintiff suffered the injuries alleged above, and is entitled to actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

**COUNT VII: Willful Noncompliance Against TransUnion and Experian**
**(Failure to Block Identity Theft Information - Violation of 15 U.S.C. § 1681c-2)**

83. Plaintiff incorporates by reference each of the preceding paragraphs.

84. Pursuant to 15 U.S.C. § 1681c-2(a), a consumer reporting agency must block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, no later than four (4) business days after the date of receipt by such agency of: (1) appropriate proof of the identity of the consumer; (2) a copy of an identity theft report; (3) the identification of such information by the consumer; and (4) a statement by the consumer that the information does not relate to any transaction by the consumer.

85. Plaintiff provided TransUnion and Experian with all necessary items for an identity theft block under 15 U.S.C. § 1681c-2(a) in the dispute package of July 17, 2026: appropriate proof of her identity in the form of copies of her identification documents; a copy of the FTC Report; her identification of the Account by its tradeline name and its number; and her written statement that she did not open the Account, authorized no one to open it, and received no benefit from it.

86. The FTC Report alleges an identity theft. It is a copy of an official, valid report filed by Plaintiff with the Federal Trade Commission, an appropriate federal law enforcement agency, and states on its face that it may be used "to prove to businesses and credit bureaus that you have submitted an FTC Identity Theft Report to law enforcement." Its filing subjects the person filing it to criminal penalties for false information, as the report itself warns. It is therefore an "identity theft report" within the meaning of 15 U.S.C. § 1681a(q)(4) and 12 C.F.R. § 1022.3(i).

87. Neither TransUnion nor Experian blocked the reporting of the Account within four business days of receiving Plaintiff's request and documentation, and neither has blocked it since.

88. Upon information and belief, in the alternative, if either TransUnion or Experian implemented a block, it rescinded that block without a valid basis and without proper notification

to Plaintiff, as the Account continued to appear on her consumer reports. Upon information and belief, neither gave Plaintiff the prompt notice 15 U.S.C. § 1681c-2(c)(2) requires when a block is declined or rescinded under 15 U.S.C. § 1681c-2(c)(1), and neither asked her for anything further.

89. Separately, 15 U.S.C. § 1681c-2(b) required TransUnion and Experian, promptly upon receipt of Plaintiff's block request, to notify Oportun that the information it had furnished may be the result of identity theft, that an identity theft report had been filed, that a block had been requested, and of the effective dates of the block. Upon information and belief, neither TransUnion nor Experian gave Oportun any such notice.

90. The failure to block, the failure to notify the furnisher, and the rescission of any block either TransUnion or Experian did implement were willful, demonstrating a knowing or reckless disregard for obligations under 15 U.S.C. § 1681c-2. Four business days is a fixed deadline that admits of no alternative reading. Forty-five days after Plaintiff sent each agency the FTC Report with her dispute, the Account was still on two of her three consumer reports, at TransUnion as a charged-off debt she owed and at Experian as a written-off debt.

91. As a direct and proximate result of TransUnion's and Experian's willful failure to comply with 15 U.S.C. § 1681c-2, Plaintiff suffered the injuries alleged above, and is entitled to actual or statutory damages, punitive damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

**COUNT VIII: Negligent Noncompliance Against TransUnion and Experian**
**(Failure to Block Identity Theft Information - Violation of 15 U.S.C. § 1681c-2)**

92. Plaintiff incorporates by reference each of the preceding paragraphs.

93. In the alternative to Count VII, the conduct of TransUnion and Experian constituted negligent noncompliance with their duty to block the reporting of information resulting from identity theft under 15 U.S.C. § 1681c-2.

94. TransUnion and Experian each failed to exercise reasonable care in implementing or maintaining the required block on information related to the Account, or in notifying Oportun of the block request as 15 U.S.C. § 1681c-2(b) requires.

95. As a direct and proximate result of TransUnion's and Experian's negligent failure to comply with 15 U.S.C. § 1681c-2, Plaintiff suffered the injuries alleged above, and is entitled to actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against each Defendant on the counts alleged against it, awarding:

I. Actual damages under 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

II. Alternatively, on the willful noncompliance claims, statutory damages under 15 U.S.C. § 1681n(a)(1)(A);

III. Punitive damages under 15 U.S.C. § 1681n(a)(2);

IV. Reasonable attorneys' fees and costs under 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

V. Pre- and post-judgment interest as allowed by law.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff requests a trial by jury on all issues so triable.

Dated: Brooklyn, New York
September 28, 2026

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Natasha Griffin

*/s/ Serge F. Petroff*
Serge F. Petroff, Esq.
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: spetroff@petroffamshen.com